UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ROBERT ALLEN GOODLOW,<br><br>Petitioner,<br>v.<br>WARDEN BAKER, *et al.*,<br><br>Respondents. | Case No. 3:18-cv-00323-MMD-CLB<br><br>ORDER |

**I. SUMMARY**

Before the Court for a decision on the merits is a petition for a writ of habeas corpus filed by Robert Allen Goodlow, who is incarcerated in the Nevada Department of Corrections. (ECF No. 29.) For reasons that follow, the Petition will be denied.

**II. BACKGROUND**

According to information gathered by the police and testimony at a preliminary hearing, one woman accused Goodlow of attempting to sexually assault her in trailer in 2007 and two other women accused him of a sexually assaulting them in an abandoned apartment in 2010, with Goodlow using a knife in one of those instances. (ECF Nos. 31-3 at 16-20, 33-38.) In January 2011, the State of Nevada charged Goodlow with burglary, battery with intent to commit sexual assault (two counts), attempted sexual assault, burglary while in possession of a deadly weapon, first degree kidnapping with use of a deadly weapon, battery with intent to commit sexual assault with use of a deadly weapon, sexual assault with use of a deadly weapon, sexual assault, and preventing or dissuading a witness or victim from reporting crime or commencing prosecution. (ECF No. 31-6.)

In March 2012, Goodlow pled guilty in the Eighth Judicial District Court for Clark County, Nevada, to one count of attempted sexual assault with use of a deadly weapon and one count of battery with the intent to commit a crime. (ECF No. 31-21.) In June 2012,

1 | Goodlow, through counsel, notified the trial court that he would like to withdraw his guilty
2 | plea. (ECF No. 31-23 at 3.) In July 2012, the trial court denied Goodlow's motion to
3 | withdraw his plea and sentenced him to 240 months with parole eligibility after 96 months
4 | on the attempted sexual assault count, with a consecutive like term for a deadly weapon
5 | enhancement, and a concurrent 120-month term on the battery count with parole eligibility
6 | after 48 months. (ECF. No. 31-28.) A judgment of conviction was entered on July 25,
7 | 2012. (ECF No. 31-31.)

Goodlow appealed. The Nevada Supreme Court reversed the judgment of conviction and remanded the case, directing the district court to appoint Goodlow new counsel to assist him with his motion to withdraw his guilty plea. (ECF No. 31-54.) On remand, the district court appointed counsel and held an evidentiary hearing, then once again denied Goodlow's motion to withdraw his guilty plea. (ECF No. 31-67; ECF No. 32-4.) Goodlow appealed. In January 2015, the Nevada Court of Appeals affirmed Goodlow's judgment of conviction. (ECF No. 32-20.)

In June 2015, Goodlow filed a petition for writ of habeas corpus in the state district court. (ECF No. 32-22.) With assistance of appointed counsel, he filed a supplement to his petition. (ECF Nos. 33-4, 33-5.) The district court denied relief. (ECF No. 33-15.) Goodlow appealed. In April 2018, the Nevada Court of Appeals affirmed the lower court. (ECF No. 33-44.)

Goodlow initiated this federal habeas proceeding on June 29, 2018. (ECF No. 6 at 1.) Pursuant to this Court's screening order (ECF No. 5), Goodlow filed an amended petition. (ECF No. 8.) Goodlow was subsequently granted leave to amend his petition again. (ECF No. 28.) On April 26, 2019, he filed his second amended petition (ECF No. 29), which the Respondents moved to dismiss. (ECF No. 30). In ruling upon that motion, this Court determined that the second amended petition contained unexhausted grounds for relief, specifically, Grounds One and Four, and the portion of Ground Five premised on counsel's alleged failure to challenge the sentence enhancement. (ECF No. 45.)

///

This Court subsequently granted Goodlow's motion to excuse exhaustion due to futility, dismissed Ground Four as procedurally defaulted, and directed Respondents to answer Goodlow's remaining claims. (ECF No. 48.) In doing so, the Court noted that Ground One and the unexhausted portion of Ground Five were subject to dismissal as procedurally defaulted, but deferred judgment as to whether Goodlow could overcome the default under *Martinez v. Ryan*, 566 U.S. 1 (2012). (*Id.*)

### III. STANDARD OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law (that is, applies a rule that contradicts governing Supreme Court precedent) or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal

system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004), *overruled on other grounds by Murray v. Schriro*, 745 F.3d 984, 999-1000 (9th Cir. 2014).; *see also Miller-El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).").

Because de novo review is more favorable to the petitioner, federal courts can deny writs of habeas corpus under § 2254 by engaging in de novo review rather than applying the deferential AEDPA standard. *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

///

///

## IV. DISCUSSION

All the remaining claims before the Court except for Ground Six are premised on allegations that Goodlow was deprived of his constitutional right to effective assistance of counsel. To demonstrate ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments, a convicted defendant must show 1) that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all the circumstances of the particular case; and 2) that it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687-94 (1984). To demonstrate ineffective assistance of counsel in the context of a challenge to a guilty plea, a petitioner must show both that counsel's advice fell below an objective standard of reasonableness as well as a "reasonable probability" that, but for counsel's errors, the petitioner would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985) (holding that the two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel).

### A. Ground One

In Ground One, Goodlow alleges he was deprived of his constitutional right to effective assistance of counsel because his trial counsel "failed to investigate and develop a valid theory of defense." (ECF No. 29 at 3.) As factual support, Goodlow alleges that he has alibis for each of the three alleged incidents that gave rise to the charges against him, but counsel failed to investigate them. This claim was not adjudicated on the merits in the Nevada courts so there is no decision to which this Court must defer under AEDPA. Even so, the claim is either procedurally defaulted under *Martinez* or, alternatively, fails under de novo review.

Under *Martinez*, a petition may establish cause excusing the procedural default of an ineffective assistance of trial counsel claim by showing he received ineffective assistance of counsel in an initial-review collateral proceeding. 566 U.S. at 9. As part of this showing, the petitioner must demonstrate a reasonable probability that the underlying

ineffective assistance of trial counsel claim would have prevailed had it been presented to the state court for post-conviction review. *See Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014), *overruled on other grounds by McKinney v. Ryan*, 813 F.3d 798, 819 (9th Cir. 2015)).

In Ground One, Goodlow claims that his alibi for the alleged attempted sexual assault in 2007 is that he was incarcerated at the time it was alleged to have occurred. For the sexual assaults alleged to have occurred in 2010, he claims that he was at a bar shooting pool for one and that he was at home with his girlfriend for the other. He further claims that he informed his trial counsel how to verify these alibis, but counsel refused to investigate them.

At the evidentiary hearing on Goodlow's motion to withdraw his guilty plea, his trial counsel testified that he had received documentation from the State that showed Goodlow was incarcerated when the attempted sexual assault was alleged to have occurred in 2007. (ECF No. 31-67 at 9-10.) He further testified that he recognized the exculpatory value of this evidence and discussed it with Goodlow in considering whether to accept the State's plea offer. (*Id.* at 10-11, 19.)

According to counsel's additional testimony, however, DNA evidence supporting the more recent 2010 assault and the trial court's decision to permit the State to present evidence of a prior conviction for a similar sexual offense were very detrimental to Goodlow's defense. (*Id.* at 11-16.) Counsel testified that, given how quickly the more recent incident was reported and the strength of the evidence supporting it, he "did not see [Goodlow] avoiding at least twenty years on that particular charge," in addition to the other charges pending. (*Id.* at 20-21.) So, while counsel recognized that the defense had "pretty good arguments regarding some of the incidents," he advised Goodlow that the negotiated plea was preferable to going to trial. (*Id.*)[1]

---

[1]In deciding Goodlow's post-conviction appeal, the Nevada Court of Appeals determined that trial counsel was not ineffective by failing to "discover Goodlow was incarcerated at the time a victim asserted he committed sexual assault." (ECF No. 33-44 at 3-4.)

6

As for the other alleged alibis, Goodlow has presented no evidence to this Court or the state court to support them. And, while Goodlow claims he instructed trial counsel how to verify the alibis, there is no indication in the record that he brought this to the attention of either the attorney who represented him in moving to withdraw his guilty plea or his state post-conviction counsel. In light of all the other ineffective assistance allegations raised in those proceedings, Goodlow's failure to mention counsel's failure to pursue ostensibly crucial alibi evidence creates significant doubt as to whether such evidence exists.

In summary, Goodlow has not shown that trial counsel was ineffective in failing to investigate his alleged alibis or that his post-conviction counsel was ineffective for not challenging trial counsel's performance on this point. Ground One is denied.

### B. Ground Two

In Ground Two, Goodlow alleges counsel was ineffective because counsel failed to adequately investigate the alleged victims, consult with him, or investigate the existence or authenticity of inculpatory DNA evidence the State possessed. He further alleges that counsel coerced him in entering a guilty plea by refusing to investigate his case and advising him that going to trial would result in a life sentence due to his prior conviction for a sex offense.

According to Goodlow's allegations, all three of the alleged victims "were transient drug abusing delinquents with criminal records and histories of mental illness." (ECF No. 29 at 6.) Goodlow also contends that the three alleged victims conspired to fabricate the sexual assault claims because they were jealous of Goodlow's fiancée. As for the DNA evidence, Goodlow claims his counsel refused his request to verify the State's claims even though a sexual assault forensic examination of the victim called into question the existence or validity of such evidence.

In deciding Goodlow's post-conviction appeal, the Nevada Court of Appeals cited *Strickland* and *Hill* as the federal law standards for adjudicating ineffective assistance of

counsel claims in guilty plea cases. (ECF No. 33-44 at 2-3.) With respect to the claim that is presented to this Court as Ground 2, the court stated as follows:

> Goodlow argued his counsel was ineffective for failing to investigate the victims' backgrounds and criminal history, retest the DNA evidence, discover Goodlow was incarcerated at the time a victim asserted he committed sexual assault, review the plea agreement with him or give appropriate advice regarding trial and plea options, investigate Goodlow's mental health or competency, and for coercing his guilty plea.
>
> The record demonstrates Goodlow raised these claims in his presentence motion to withdraw guilty plea, the trial-level court conducted an evidentiary hearing regarding these issues, concluded they lacked merit, and denied the motion. This court affirmed the denial of Goodlow's presentence motion to withdraw guilty plea on direct appeal. *Goodlow v. State*, Docket No. 64499 (Order of Affirmance, January 21, 2015). Because this court has already considered these claims and concluded Goodlow was not entitled to relief, the doctrine of the law of the case prevents further litigation of these issues and "cannot be avoided by a more detailed and precisely focused argument." *Hall v. State*, 91 Nev. 314, 316, 535 P.2d 797, 799 (1975). Therefore, we conclude the district court did not err by denying these claims.

(*Id.* at 3-4.) In the direct appeal affirmance, the Nevada Court of Appeals upheld the district court's determination that Goodlow's claims of ineffective assistance of counsel were either unsupported or belied by the record and that he "failed to show prejudice stemming from counsel's representation." (ECF No. 32-20 at 3.)

Reviewed under § 2254(d), the state court's adjudication of the claim did not "result[] in a decision that was contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," nor did it "result[] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." The state court applied the correct federal law standards and did so in a reasonable manner. And, the facts upon which the state court rested its decision are supported by the record.

At the evidentiary hearing on Goodlow's motion to withdraw his guilty plea, his trial counsel testified that he discussed with Goodlow the "specific defenses he may have had regarding all three individuals." (ECF No. 31-67 at 7.) With regard to the 2007 incident, counsel testified that his private investigator located the victim's boyfriend who was reported to have defended her from Goodlow's attempted assault but that the boyfriend

indicated he would not cooperate as a witness. (*Id.* at 8-9.) Counsel further testified that he believed that he had requested background checks on all three victims. (*Id.* at 23.)

When asked about Goodlow's request that he have the DNA samples retested, counsel testified as follows:

> He wanted me to retest those items. If we only had -- and I made the strategic decision not to. There's a finite amount of resources that we have to deal with in most of these cases, and considering the fact that we had other significant indicators that his DNA was present either on the person or on other items of clothing of this victim, in addition to the identity match, coupled with his statement that I never touched her; I never had any sex with her; there's no way my semen could possibly be on there. I strategically decided not to go down that road any longer than was already done. It could not have -- I didn't see any reasonable chance of that being of assistance.

(*Id.* at 13-14.) Counsel also explained that, notwithstanding Goodlow's expressed concerns, the results of the sexual assault forensic examination and the DNA tests were not inconsistent. (*Id.* at 14-15.)

As for Goodlow's claim that his guilty plea was coerced, counsel testified that Goodlow had known about the plea offer for well over a year and that, just prior to entering into the guilty plea agreement counsel, counsel went over the agreement with Goodlow "for a good half hour to forty-minutes sitting in the back of row of [the] courtroom, discussing the pros and cons of accepting the deal versus going to trial with the evidence as it was before us." (*Id.* at 19-20.) The trial court thoroughly canvassed Goodlow prior to accepting the agreement. (ECF No. 31-21.) The transcript of that proceeding indicates that Goodlow was entering his guilty plea willingly with a full understanding of its terms. (*Id.*)

Based on the foregoing, trial counsel's performance did not fall below an objective standard of reasonableness. But even if it did, Goodlow has also failed to establish that, but for counsel's deficient performance, he would have insisted on going to trial. By pleading guilty, Goodlow avoided the risk of multiple life sentences and several additional terms of years. *See, e.g.*, NRS § 200.366 (penalties for sexual assault under Nevada law); NRS § 193.165 (additional penalty for use of deadly weapon). As discussed above, the evidence supporting one of the sexual assault charges was insurmountable. Also,

Goodlow has not shown that investigation into the victims' backgrounds or retesting of the DNA evidence would have produced significant exculpatory evidence.[2] Goodlow's failure to prove either prong of the *Strickland* standard requires this Court to defer the state court's decision. *See Premo v. Moore*, 562 U.S. 115, 132 (2011) (discussing the "substantial burden on the claimant" when alleging ineffective assistance in plea negotiations). Ground Two is denied.

### C. Ground Three

In Ground Three, Goodlow alleges his state judgment of conviction is unconstitutional because he was not competent when he entered his guilty plea and trial counsel failed to investigate or raise the issue. According to Goodlow, he "displayed symptoms of severe mental illness and deterioration of faculties," but counsel failed to have him evaluated by a mental health professional to determine his mental state when he entered his guilty plea. (ECF No. 29 at 9.) He further alleges that he suffered from severe depression which prevented him from making sound decisions.

The Nevada Court of Appeals considered this claim in conjunction with the allegations Goodlow raised in Ground Two when the court decided Goodlow's post-conviction appeal. (ECF No. 33-44 at 3-4.) As noted above, the court denied relief under the law of the case doctrine because the court had previously upheld, on direct appeal, the district court's determination that Goodlow's claims of ineffective assistance of counsel were either unsupported or belied by the record and that he "failed to show prejudice stemming from counsel's representation." (*Id.*, ECF No. 32-20 at 3.)

Reviewed under § 2254(d), the state court's adjudication of the claim did not "result[] in a decision that was contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," nor did it "result[] in a decision that was based on an unreasonable determination

---

[2]As to the former, Goodlow has only demonstrated that one of the victims was bipolar and had been arrested for DUI and possession of methamphetamine. (ECF No. 33-5 at 24; ECF No. 33-12 at 6.)

of the facts in light of the evidence presented in the State court proceeding." The state court applied the correct federal law standards and did so in a reasonable manner. And, the facts upon which the state court rested its decision are supported by the record.

At the evidentiary hearing on Goodlow's motion to withdraw his guilty plea, his trial counsel testified as follows:

> [Goodlow] always struck me as a competent individual. He always – I mean just look at the things we've discussed regarding the more hypertechnical aspects of the – whether the vaginal -- there was a swab from the vaginal area and whether that showed trauma; whether he was incarcerated or not. Obviously I didn't know whether he was incarcerated at any give time, but he remembered these facts.
>
> He was very technical with many of his – well, many of his disagreements with the evidence were very technical in nature. It's probably the best way to put it. So he seemed to have a good grasp of what he was up against.

(ECF No. 31-67 at 17-18.) On cross-examination, counsel reiterated these points and also noted that he never saw any reason for Goodlow to be evaluated for competency and that Goodlow "was very specific in his requests to go out and seek out this piece of information or that piece of information." (*Id.* at 29.) Notably, Goodlow also testified at the evidentiary hearing but made no mention of mental impairments impacting his understanding of the plea negotiations or his decision to enter a guilty plea. (*Id.* at 35-45.) In addition, the transcript of the trial court's plea canvass shows no indication of Goodlow's alleged mental limitations. (ECF No. 31-21.)

In the absence of any evidence in the record to support Goodlow's allegations, Goodlow falls well short of demonstrating that his trial counsel provided ineffective assistance of counsel by not raising Goodlow's mental health as an issue. Ground Three is denied.

**D.     Ground Five(A)**

In Ground Five(A), Goodlow alleges counsel was ineffective because counsel failed to argue against the 8 to 20-year sentence for the deadly weapon enhancement, which was imposed by the court even though the State did not argue for it. This claim was not adjudicated on the merits in the Nevada courts so there is no decision to which this

1 | Court must defer under AEDPA. But, like Ground One, the claim is either procedurally defaulted under *Martinez* or, alternatively, fails under de novo review.

First, Goodlow is incorrect in claiming the State did not ask for an 8 to 20-year sentence for the deadly weapon enhancement. Probation and Parole recommended the sentence, and the prosecutor argued for it. (ECF No. 31-29 at 7.)

Second, Goodlow's counsel asked for "the least amount of time allowable under the sentence." (*Id.* at 9.) Goodlow does not explain what arguments counsel should have made in reference to the sentence enhancement, nor does he demonstrate a reasonable likelihood that such arguments would have resulted in a more favorable sentence.

Ground Five(A) is denied.

**E.  Ground Five(B)**

In Ground Five(B), Goodlow alleges counsel was ineffective because counsel failed to request that a psychosexual examination be conducted on Goodlow for the purpose sentence mitigation. In deciding Goodlow's post-conviction appeal, the Nevada Court of Appeals addressed this claim as follows:

> Goodlow argued his counsel was ineffective for failing to have him undergo a psychosexual evaluation. Goodlow failed to demonstrate his counsel's performance was deficient or resulting prejudice. Goodlow merely speculated a psychosexual evaluation could have provided favorable information, which is insufficient to demonstrate this claim had merit. See *Hargrove v. State*, 100 Nev. 498, 502-03, 686 P.2d 222, 225 (1984). Therefore, we conclude the district court did not err by denying this claim.

(ECF No. 33-44 at 5.)

Goodlow fails to support this claim with any specific factual allegations about what a psychosexual evaluation would have revealed or how it would have weighed in favor of a more favorable sentence. *See Bible v. Ryan*, 571 F.3d 860, 871 (9th Cir.2009) (speculation about test results is insufficient to show *Strickland* prejudice). Thus, here again, Goodlow cannot show that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Ground Five(B) is denied.

**F.    Ground Six**

In Ground Six, Goodlow alleges his conviction and sentence are unconstitutional because the state district court did not allow him to withdraw his guilty plea. (ECF No. 29 at 15.) Specifically, he claims he met the "manifest injustice" standard necessary to permit withdrawal of the plea under Nevada law by asserting that he was actually innocent and that his counsel had coerced him into pleading guilty. (*Id.* (citing NRS § 176.165).)

In deciding Goodlow's direct appeal, the Nevada Court of Appeals addressed Goodlow's claim challenging the state district court's decision as follows:

> Appellant claims that the district court erred by denying his presentence motion to withdraw his guilty plea. Appellant argues that the district court improperly applied the test for an ineffective-assistance-of-counsel claim instead of determining whether he had advanced a substantial, fair, and just reason for withdrawing his plea. However, the primary reason that appellant advanced for withdrawing his guilty plea was ineffective assistance of counsel.
>
> A defendant may move to withdraw a plea before sentencing, NRS 176.165, and the district court may, in its discretion, grant such a motion "for any substantial, fair, and just reason." *Crawford v. State*, 117 Nev. 718, 721, 30 P.3d 1123, 1125 (2001).
>
> A defendant who pleads guilty upon the advice of counsel may attack the validity of the guilty plea by showing that he received ineffective assistance of counsel under the Sixth Amendment to the United States Constitution. The applicable test to determine whether counsel was ineffective is set forth in *Strickland v. Washington*, [466 U.S. 668 (1984) ]. *Nollette v. State*, 118 Nev. 341, 348–49, 46 P.3d 87, 92 (2002) (internal footnote omitted). "On appeal from a district court's denial of a motion to withdraw a guilty plea, [we] will presume that the lower court correctly assessed the validity of the plea, and we will not reverse the lower court's determination absent a clear showing of an abuse of discretion." *Riker v. State*, 111 Nev. 1316, 1322, 905 P.2d 706, 710 (1995) (internal quotation marks omitted).
>
> The district court conducted an evidentiary hearing and found, among other things, that appellant's claims of ineffective-assistance were either bare assertions or belied by the record, appellant's claims that he was depressed and unable to make rational decisions as a result of counsel's ineffectiveness and that he was not given enough time to review the guilty plea agreement were belied by the record, and appellant failed to show prejudice stemming from counsel's representation. The record on appeal supports the district court's factual findings and we conclude that appellant has not demonstrated that counsel was ineffective; established a substantial, fair, and just reason for withdrawing his plea; or shown that the district court abused its discretion by denying his motion to withdraw his

13

guilty plea. *See Molina v. State*, 120 Nev. 185, 190, 87 P.3d 533, 537 (2004) (defendant bears the burden of showing that the plea is invalid).

(ECF No. 32-20 at 2-4.)

To the extent Ground Six challenges the state district court's exercise of discretion under state law, the claim is not cognizable as a federal habeas claim. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."). In addition, no U.S. Supreme Court case recognizes a constitutional right to withdraw a guilty plea. *See Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court regarding the [issue presented] here, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law.'").

There is U.S. Supreme Court precedent, however, recognizing a right under the Due Process Clause to have one's guilty plea be both knowing and voluntary. *See Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). The Court in *Boykin* held that, to satisfy this requirement, the record must show that the defendant was made aware that he was waiving his privilege against compulsory self-incrimination guaranteed by the Fifth Amendment, the right to a trial by jury, and the right to confront one's accusers. *Id.* at 243. The Court has identified other prerequisites for a plea to be considered knowing and voluntary. For example, a guilty plea is voluntary for due process purposes only if a defendant has received notice of the true nature of the charges against him. *Henderson v. Morgan*, 426 U.S. 637, 645 (1976). In addition, a guilty plea is not "voluntary," and thus invalid, when it is the product of threats, improper promises, or other forms of wrongful coercion. *See Brady v. United States*, 397 U.S. 742, 754-55 (1970). Also, a plea of guilty is voluntary and knowing only if it is "entered by one fully aware of the direct consequences" of his plea. *Id.* at 755.

The guilty plea agreement Goodlow signed together with the trial court's plea canvass satisfied the constitutional requirements set forth above. (ECF Nos. 31 and 31-21.) Given the lack of evidence to support his claims of coercion, Goodlow has not overcome the strong presumption that he understood the nature of the charges against

him and the rights he was waiving and that he voluntarily entered his guilty plea. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (holding that the petitioner's representations, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings" and that "[s]olemn declarations in open court carry a strong presumption of verity").

Similarly, a claim of "actual innocence" does not, in and of itself, provide a basis for overturning a conviction. Instead, a claim of "actual innocence" provides a mechanism through which a petitioner may have a court consider an otherwise procedurally defaulted claim of a constitutional violation. *See Schlup v. Delo*, 513 U.S. 298, 323–27 (1995) (noting that a procedurally defaulted habeas petitioner must show that a constitutional violation has probably resulted in the conviction of one who is actually innocent). Even if the Court were to consider the claim of actual innocence as a basis for setting aside his guilty plea, Goodlow has not met the requirements for such a claim. To establish a claim of actual innocence a "petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. Petitioner bears the burden of proof on this issue by a preponderance of the evidence, and he must show not just that the evidence against him was weak, but that it was so weak that no reasonable juror would have convicted him." *Lorentsen v. Hood*, 223 F.3d 950, 954 (9th Cir. 2000) (internal quotations and citations omitted). "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329. Goodlow's mere claim of actual innocence, unsupported by evidence, does not suffice.

Based on the foregoing, this Court must defer to the Nevada Court of Appeals' decision under § 2254(d) because neither the reasoning nor the result of the decision contradicts U.S. Supreme Court precedent. While the Nevada Court of Appeals analyzed Goodlow's claim primarily in terms of state law, the standards it employed in denying relief were no less protective of Goodlow's rights (and perhaps more so) than the federal

15

standards discussed above. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (holding that state court is not required to cite U.S. Supreme Court cases, or even be aware of them, to avoid its decision being "contrary to" U.S. Supreme Court precedent). In addition, the court's findings of fact were reasonable in light of evidence presented in the state court proceeding.

Ground Six is denied.

### G. Certificate of Appealability

This is a final order adverse to the Petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability (COA). Accordingly, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determinations and rulings in adjudicating Goodlow's petition, the Court declines to issue a certificate of appealability for its resolution of any procedural issues or any of Goodlow's habeas claims.

///
///
///
///
///

## V. CONCLUSION

It is therefore ordered that Goodlow's second amended petition for writ of habeas corpus (ECF No. 29) is denied.

It is further ordered that a certificate of appealability is denied.

The Clerk shall enter judgment accordingly and close this case.

DATED THIS 8th Day of June 2021.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE